| STATE OF INDIANA | ) | | IN THE WHITLEY SUPERIOR COURT |
|---|---|---|---|
| | ) | SS: | |
| COUNTY OF WHITLEY | ) | | CAUSE NO. 92D01-2307-CT-000626 |

STATE OF INDIANA          )
                          )   SS:
COUNTY OF WHITLEY         )

NICOLE D. WILSON,         )
                          )
        Plaintiff,        )
                          )
    v.                    )
                          )
LEAR CORPORATION,         )
                          )
        Defendant.        )

IN THE WHITLEY SUPERIOR COURT

CAUSE NO. 92D01-2307-CT-000626

## **COMPLAINT**

Plaintiff, by counsel, alleges against Defendant that:

1. The Plaintiff is Nicole D. Wilson who is an African-American/Black female whose sexual orientation is gay, and she filed an ICRC/EEOC Charge of Discrimination on or about January 6, 2023, a copy of which is attached hereto, made a part hereof, and incorporated herein as Exhibit "A". The EEOC issued a Determination and Notice of Rights on or about April 11, 2023 (attached as Exhibit "B"), and this Complaint has been filed within ninety (90) days after receipt thereof.

2. The Defendant is Lear Corporation ("Lear"), a company doing business at 2101 South 600 East, Columbia City, Indiana 46725. Lear Corporation is an "employer" for purposes of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981. Lear's Registered Agent is CT Corporation System, 334 N. Senate Avenue, Indianapolis, IN 46204.

3. Plaintiff began working for Defendant through a temporary agency on or about May 23, 2022. Plaintiff, who is a gay/lesbian female, was faced with the following

–1–

discriminatory actions by coworkers which caused her to suffer a hostile work environment on account of her race and sexual orientation:

   a. On or about June 8, 2022, a Caucasian female coworker, Veronica Hawkins, started asking Plaintiff questions that were not work-related and making comments about Plaintiff's appearance.

   b. A couple of hours later, Veronica Hawkins asked Plaintiff about "do you think you are all that in them leggings?" and Hawkins told Plaintiff she had a big booty – which was a reference to both her sex and her race, as a Black female with a large butt.  Plaintiff attempted to ignore the racist/sexist comments of Veronica Hawkins.

   c. Ms. Hawkins kept asking Plaintiff questions and making comments about race/ sex – such as "my son would love to have a big booty black girl."

   d. Plaintiff complained to her supervisor, "Thomas", who told Plaintiff to wait to formally complain until she got into the Union.

   e. On or about June 13, 2022, Lear hired Plaintiff's girlfriend, and Plaintiff and her girlfriend were able to work together.  One day, Veronica Hawkins saw Plaintiff and her girlfriend walking into work together, then Ms. Hawkins went to their line and told everyone on the line that Plaintiff was gay and that she hated gay people, and she made these remarks and comments to enough employees that the messages and comments got back to Plaintiff.

   f. Veronica Hawkins came to the Plaintiff on or about June 28, 2022 and asked Plaintiff why she was a gay Black girl, "because God don't approve of gay people."  So, Plaintiff asked why Ms. Hawkins was judging her and asked her to stop making those types of remarks and to leave her alone.  In response, Ms. Hawkins got mad and aggressively walked away and went on to talk about Plaintiff to her Caucasian coworkers.

   g. Later that day, June 28, 2022, Veronica Hawkins walked near the Plaintiff and rammed her shoulder into Plaintiff.  Plaintiff stayed silent about this event because she was waiting to get hired in full-time, but emotionally, the discriminatory remarks and actions of Veronica Hawkins were taking their toll, and so Plaintiff became depressed and sought medical treatment for her depression.

   h. A few days later, Veronica Hawkins approached Plaintiff and started yelling at her calling her a bitch and saying, "don't test me, I'm not one to play with, don't try me mother fucker."

–2–

i.  Approximately two weeks went by during which Plaintiff tried to suppress the negative energy and actions of Veronica Hawkins who apologized for her words and actions, but the apology was meaningless. The Supervisor was standing close by and saw everything, and he told Plaintiff and Veronica to go to the office – this was around June 29, 2022. Veronica started calling Plaintiff "bitch" again, telling Plaintiff she could not "talk" because she was "not fuck'n hired in and was not going to be", and Veronica was going to make sure of that. The Supervisor ("Thomas") slammed the door and his fists hit the table really hard and was yelling loudly, "I told you hoes to shut the fuck up and work, didn't I?" Plaintiff cried and told him that he didn't have to yell at her like that, and that she was a human being and should be treated with a little respect. Plaintiff felt emotionally injured and that her depression was re-triggered by everything that had happened. Plaintiff then complained to her Union Representative, Mike Turner.

j.  When Plaintiff returned to the line, Veronica Hawkins started yelling and told another Union Representative to get Plaintiff off the line. That is when Thomas called Plaintiff back into the office and told Plaintiff to sit in the break room and said Veronica Hawkins was going to get her fired. Thomas told Plaintiff to return the next day, but stay far away from Veronica Hawkins.

k.  In fact, Lear terminated Plaintiff as the staffing agency called Plaintiff and told her that Lear had ended her assignment and had been fired on June 30, 2022. Plaintiff got this telephone call as she came to work and was in Lear's parking lot. Plaintiff saw the Team Lead and his wife, both of whom praised Plaintiff's work performance, and told them that she got fired without a reason and she couldn't believe that Veronica Hawkins could get her fired (the same Veronica Hawkins who discriminated against Plaintiff because of her race and sexual orientation).

l.  The Team Lead and his wife said they were going to give Lear witness statements, and try to get other team members to give witness statements as well. Other than Veronica Hawkins, Plaintiff told the Team Lead that she loved her job and wanted to come back.

m.  While in the parking lot, Plaintiff let her girlfriend out of the car, and then Plaintiff drove back to her home.

n.  Plaintiff learned that between six to eight other team members had went to Human Resources and the Union in an effort to get Plaintiff her job back at Lear because the termination was unfair and discriminatory. In fact, on or about July 12, 2022, Lear did rehire Plaintiff, but she had to report to the Supervisor, Thomas, from now on. Plaintiff met a new Team Lead, Cortez Ellis, who Plaintiff noticed would leave the line and talk to Veronica Hawkins on occasion.

o.  The new Team Lead, Cortez Ellis, kept Plaintiff working on a job that was usually a two-person job for three to four hours at a time, to the point where her fingers and hand would hurt terribly, so much so that she could not properly perform her job.

p.  Plaintiff asked to be moved positions because of the difficulty she was having in doing the job with her fingers and hands in so much pain, but the Team Lead told Plaintiff she could not move because she was in training. Cortez Ellis knew that Plaintiff could not perform the two-person job by herself, but yet, he insisted that she perform this job. Some coworkers tried to help her, but Cortez Ellis yelled at them, "get back to your job. Don't help her if she don't like it, she can leave. This is my mother fuck'n line."

q.  Plaintiff became emotional and started to cry because she realized that Lear brought her back to work only to put her on a more difficult position, and that is when Plaintiff became aware that Cortez Ellis and Veronica Hawkins were best friends and that they rode to work together.

r.  Plaintiff tried her best to perform the two-person job with her painful and swollen fingers, and she went to Cortez Ellis and showed him her hands to see if she could get a break from performing the job she found impossible to do with her fingers, and he looked straight in her eye and said, "Talking to me about your fingers and hands is like talking to a brick wall, because I honestly don't want to hear it." Plaintiff walked away, emotionally hurt, and tried to work. Hours later, Cortez Ellis walked up to Plaintiff and asked her, "Are we beefing?" and said this very close to Plaintiff's face, and then he said, "because I'm about that life cause what you wanna do? (referring to her gay/lesbian lifestyle). Plaintiff asked Cortez what he was talking about and said, "I barely know you and don't want to fight you and you're a whole man."

s.  Later that night after Plaintiff got off of work, she and her girlfriend were on their way home, and the girlfriend told Plaintiff that Veronica Hawkins said to her, "I know where your big booty black girlfriend is" and then told the girlfriend what line she was actually working on, and this made Plaintiff realize that Veronica Hawkins was still following her whereabouts at work.

t.  That same evening, when Plaintiff was getting food at a restaurant, she was approached by Veronica Hawkins' son who asked her, "Why are you beefing with my mom, because I'll hurt a mother fucker about my momma." To which Plaintiff asked him who he was and he said, "do you know Veronica Hawkins?" and Plaintiff said that she did know her and that she was not "beefing with her" but that she did not like Plaintiff because she was gay/lesbian, and the son remarked, "Oh ya, she don't like gay people." Plaintiff became very uncomfortable because she was just threatened by Veronica Hawkins' son.

u.  On Monday, July 18, 2022, Plaintiff went back to work and went straight to her Supervisor, Thomas, and reported that she had been threatened by Veronica Hawkins' son, Terrance Whitt.   Thomas said he wasn't going to do anything about it and for Plaintiff to make a police report.

v.  Plaintiff went back to her line at work and Cortez came up to her and was bumping her and stepping on her feet, and kept repeating to Plaintiff that she was too slow, and Plaintiff replied that she had a learning disability, and Cortez ignored her and basically said she had one day to "get the job down."

w.  The next day at work, Cortez singled out Plaintiff and made her work the two-person job even though her fingers were in pain and swollen and were wrapped with tape.   He laughed at Plaintiff and said she "looked handicapped." Plaintiff told him, "I know you are trying to make me quit this job, but it's not going to happen."   He laughed and said, "I can't wait to tell my friend (Veronica Hawkins) about this."

x.  Plaintiff tried to do the job for a couple of hours, and then rotated off, but Cortex then tried to put Plaintiff back on the two-person job and Plaintiff could not perform it because her thumbs were so swollen and tight.   Cortez called the Plant Manager over, and that his when Plaintiff was summoned to the office and she became emotional and just lost it and told the Plant Manager, Jason Henry, everything – including the discriminatory and threatening actions of Veronica Hawkins.   Plaintiff was depressed and overwhelmed and started having suicidal thoughts and was overcome with sadness, frustration, and felt singled out, unwanted, unwelcome, and targeted because of her race and sexual orientation.

y.  On Monday, August 1, 2022, Plaintiff had finally made it to her 60-day hire-in date and had already performed her physical and urine tests, and everything was supposedly good to go, and she was happy because she knew she was going to be hired in full time, but Defendant did not call Plaintiff to hire her in, but called her girlfriend about work.

z.  On August 2, 2022, Plaintiff was told to look at the "sheet" and learned that there was a whole new hire-in date and that she had to start her probationary time over, which Plaintiff believed to be further discrimination and retaliation, and that is when she decided to file her Charge of Discrimination.   Plaintiff called off of work to go to the Indiana Civil Rights Commission.   Plaintiff knew that she did not have any "points".   The next day, Plaintiff came to work, but her badge did not work, and Cortez Ellis escorted her to the office where she was told that she had "pointed out" and was terminated – even though she had been there for sixty-two days and got one point and was told that she would get hired as a full-time employee at sixty days and that her points would reset.

4. Plaintiff was discharged for false, pretextual, and discriminatory reasons. Plaintiff left Lear after she was terminated, and then got a phone call from her girlfriend at work who stated that the Manager, Jason Henry, was telling everyone that Plaintiff had voluntarily quit. Plaintiff learned that both Jason Henry and Cortez Ellis were telling Plaintiff had quit her job, and therefore, Defendant, out of discrimination and retaliation, fired Plaintiff, and at the same time, telling people that Plaintiff had quit.

5. As a direct and proximate cause of Defendant's discrimination and retaliation, Plaintiff lost her job and job-related benefits including income. Plaintiff also suffered humiliation, embarrassment, emotional distress, mental anguish, depression, and other damages and injuries for which she seeks compensatory damages.

6. Defendant's conduct was intentional, knowing, willful, wanton, and in reckless disregard of Plaintiff's federally protected civil rights warranting an imposition of punitive damages.

WHEREFORE, Plaintiff prays for judgment against the Defendant, for compensatory damages, pecuniary damages, punitive damages, reasonable attorney's fees and costs, and for al other just and proper relief in the premises.

## **JURY DEMAND**

Pursuant to Rule 38 of the Indiana Rules of Trial Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted,

**MYERS SMITH WALLACE, LLP**


/s/Christopher C. Myers
Christopher C. Myers, #10043-02
809 South Calhoun Street, Suite 400
Fort Wayne, IN 46802
Telephone:    (260) 424-0600
Facsimile:    (260) 424-0712
E-mail:        cmyers@myers-law.com
Counsel for Plaintiff

Filed: 7/5/2023 10:52 A
Cler
Whitley County, Indian

**92D01-2307-CT-000626**

Whitley Superior Court

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ EEOC<br>☐ FEPA | 470-2022-03734 |

| Indiana Civil Rights Commission | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| Nicole D. Wilson | 260-348-5484 | |

Street Address

2330 boswer apt 210 US

FT WAYNE, IN 46803

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| Lear corporation | 15 - 100 Employees | |

Street Address

2101 s 600 east

COLUMBIA CITY, IN 46725

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| Retaliation, Sex | Earliest: 06/01/2022  Latest: 06/30/2022<br><br>☐ Continuing Action |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began my employment with Lear Corporation on or about May 23, 2022, as Assembly Line Worker, I worked for Lear Corporation through a temporary agency. I reported to Thomas (Last Name Unavailable), Supervisor. During the course of my employment, I was subjected to harassment by Veronica Hopkins, Line Worker. On several occasions, Veronica stated I was a Lesbian Black girl and had a big booty. I was told by my co-workers that Veronica stated she hated Lesbians. On or about June 13, 2022, I complained to my supervisor, Thomas about being harassed by Veronica because of my sexual orientation. Thomas indicated he could not do anything about it. After my complaint, Ms. Veronica continued harassing me. On or about June 30, 2022, I was informed by the staffing agency that the Respondent ended my assignment. I was wrongfully discharged. I believe I was discriminated against because of my sex, female; my sexual orientation; and retaliated against because I engaged in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally Signed By: Nicole D. Wilson**<br><br>01/06/2023 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| *Charging Party Signature* | |

Ex. A

 **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Indianapolis District Office
101 West Ohio St, Suite 1900
Indianapolis, IN 46204
(463) 999-1240
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 04/11/2023

**To:** Nicole D. Wilson
1910 Hobson Road
Building E
Apartment 211
FORT WAYNE, IN 46805
Charge No: 470-2022-03734

EEOC Representative and email:        FREDERICK BRUBAKER
Enforcement Supervisor
frederick.brubaker@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 470-2022-03734.

On behalf of the Commission,

Digitally Signed By: Michelle Eisele
04/11/2023
Michelle Eisele
District Director

Ex B